UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD C. NEWMAN,

Plaintiff,

v.

TROTT & TROTT, P.C., MARCY J. FORD, DAVID A TROTT, KENNETH E. KRUREL, and JOHN and JANE DOES 1-10,

Defendant.

______________________________/

Civil Action No. 11-cv-14788

District Judge Nancy G. Edmunds
Magistrate Judge Laurie J. Michelson

**REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/DISMISSAL [20]**

In his initial Complaint, p*ro se* Plaintiff Todd C. Newman ("Plaintiff") alleged that Defendants Trott & Trott PC, and Trott & Trott employees Marcy J. Ford, David A. Trott, Kenneth E. Krurel and John and Jane Does 1-10 ("Defendants"), engaged in abusive, deceptive, and unfair practices in their attempted collection of a debt. (Dkt. 1.) Plaintiff filed an Amended Complaint (Dkt. 15) alleging primarily that Defendants violated the Fair Debt Collection Practices Act. 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Michigan Collection Practices Act Mich. Comp. Laws § 445.521 *et seq*. ("MCPA"), as well as other state law claims. Presently before the Court for Report and Recommendation is Defendants' Motion for Summary Judgment/Dismissal. (Dkt. 20.) The Court has considered Defendants' Motion, Plaintiff's Response (Dkt. 22), and Plaintiff's supplemental brief (Dkt. 24, Ex. A) and will waive oral argument. *See* E.D. Mich. LR 7.1(f).[1]

For the following reasons, this Court **RECOMMENDS** that Defendants' Motion for

[1]The Court GRANTS Plaintiff's Motion for Leave to File Supplement Brief. (Dkt. 24.)

Summary Judgment/Dismissal be **GRANTED**.

## I. FACTUAL BACKGROUND

### A. Plaintiff's Mortgage

On April 19, 2006, Plaintiff and his wife, Kelly L. Newman, borrowed $320,000 from non-party Countrywide Home Loans, Inc. ("Countrywide"), to purchase a home located at 7637 Arnold Road, Ira Township, Michigan ("Property")[2]. (Dkt. 20, Def. Mot. Summ. J., Ex. B.) Plaintiff and his wife executed a promissory note evidencing that loan ("Note"). (*Id.*) To secure the Note, Plaintiff and his wife executed a mortgage agreement ("Mortgage"), which was recorded with the Saint Clair County Register of Deeds on May 11, 2006. (*Id.*) The Mortgage defined Plaintiff and his wife as the "Borrower" and mortgagors, non-party Countrywide as the "Lender," and non-party Mortgage Electronic Registration Systems, Inc. ("MERS") as the "mortgagee" and "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." (*Id.*) The Mortage further provided that "Borrower does hereby mortgage, warrant, grant, and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the [Property]." (*Id.*)

Plaintiff alleges that Countrywide created the Harborview Mortgage Loan Trust 2006-5 ("Trust") on April 26, 2006 and filed a Pooling Agreement ("PA") with the Securities & Exchange Commission ("SEC") on June 1, 2006. (Dkt. 15, Am. Compl., Ex. I, Aff. of Lane A. Houk.) The PA lists Deutsche Bank National Trust Company ("Deutsche Bank") as the trustee for the Trust. (*Id.*) Plaintiff further alleges that Countrywide assigned the Mortgage to non-party Greenwich

---

[2] Plaintiff also has a related suit pending before this Court against Bank of America, N.A. and Deutsche Bank National Trust Company. (No. 11–12498.)

Capital Financial Products, Inc., which assigned it to non-party Greenwich Capital Acceptance, Inc. (*Id.*)

On November 19, 2011, MERS "for value received, assign[ed] and transfer[red] to Deutsche Bank . . . all its right, title and interest in" the Mortgage. (Dkt. 15, Am. Compl., Ex. A; Dkt. 20, Def. Mot. Summ. J., Ex. D.) MERS assigned the Mortgage to Deutsche Bank "As Trustee for the Harborview Mortgage Loan Trust." (*Id.*) This assignment was recorded by the St. Clair County Register of Deeds on January 7, 2011. (*Id.*) Defendant Marcy J Ford, a Trott and Trott attorney, drafted the assigning document, and Defendant Kenneth E. Kurel, also a Trott and Trott attorney, signed it on behalf of MERS.[3] (*Id.*)

**B. Plaintiff's Communications with Trott & Trott**

After preparing and executing the assignment of the Mortgage to Deutsche Bank, Defendant Trott and Trott P.C. ("Trott") sent Plaintiff two letters and a notice of compliance with the FDCPA. (Dkt. 15, Am. Compl. ¶ 32, Dkt. 20, Def. Mot. Summ. J., Ex. E.) The first letter stated that Trott represents "BAC Home Loans Servicing, L.P., which is the creditor to which your mortgage debt is owed or the servicer for the creditor to which the debt is owed." (*Id.*) The letter further advised that Plaintiff had an outstanding debt of $375,918.49 and that Trott had been instructed to foreclose on the Mortgage.. (*Id.*) The letter also explained the process for challenging the validity of the debt:

> The debt described above will be assumed valid by this office, the creditors law firm, unless you, the debtor/consumer, within thirty (30) days after the receipt of this notice, dispute the validity of the debt, or any portion thereof. If you notify this office in writing within thirty (30) days of the receipt of this

[3] Defendant Kurel had signing authority pursuant to an Agreement for Signing Authority dated May 19, 2009. (*Id.*)

> notice, that the debt, or any portion thereof, is disputed, we will obtain a verification of the debt and a copy of the verification will be mailed to you.

(Dkt. 20, Def. Mot for Summ. J., Ex. E.) Attached to the letter was a notice stating that Defendants were proceeding in compliance with the FDCPA. (*Id.*)

Trott sent a second letter to Plaintiff and his wife. (*Id.*) This November 22, 2010 letter explains that their Mortgage "is in default for non-payment." (*Id.*) The letter lists the amount due as $375,918.49 and provides that Plaintiff or his wife could contact Trott within fourteen days of the letter "to work out a modification of the mortgage loan to avoid foreclosure." (*Id.*)

In response to these two letters, Plaintiff sent Trott a reply on November 29, 2010 disputing the debt owed to BAC Home Loans Servicing, L.P. ("BACHLS"). (Dkt. 15, Am. Compl. ¶ 35-37, Dkt. 20, Def. Mot. Summ. J., Ex. F.) The reply further advised that Plaintiff had sent three Qualified Written Requests to BACHLS asking them to verify the debt. (*Id.*) The first request, dated October 11, 2010 sought "the original wet ink signature to establish proof of claim within 30 days." (*Id.*) According to Plaintiff, BACHLS only provided photocopies of the Mortgage and Note and no other documents to support its claim. (*Id.*) The second request, dated November 11, 2010, again asked that BACHLS provide proof of claim, this time within twenty-one days. (*Id.*) Plaintiff alleges that BACHLS once again only provided photocopies of the Mortgage and the Note and "no evidence of transfer while ignoring the Plaintiff's request for verification of the debt . . . ." (*Id.*) Plaintiff's third request to BACHLS, dated November 26, 2010, sought proof of claim within three days. (*Id.*) Plaintiff wrote that BACHLS ignored his questions regarding whether BACHLS held the Note and whether BACHLS was a creditor in the loan transaction. (*Id.*) Lastly, Plaintiff's letter asked Trott to send a reply recusing themselves from the foreclosure action and threatening to sue them if they did not. (*Id.*)

On Decmember 9, 2010, Trott responded to Plaintiff's November 29, 2010 letter. (Dkt. 15, Am. Compl.¶ 38-39, Dkt. 20, Def. Mot. Summ. J., Ex. G.) Plaintiff was advised that "This letter is in response to your request for a reinstatement amount." (*Id.*) The letter provides a description of the charges, fees and payments owed in order to reinstate the mortgage. (*Id.*) While Trott did not expressly verify the debt, the letter makes clear that Plaintiff owed BACHLS $18,644.48. (*Id.*)

In response to this letter, Plaintiff sent BACHLS — and allegedly Defendants[4] — another Qualified Written Request on December 16, 2010. (Dkt. 15, Am. Compl.¶ 40, Dkt. 20, Def. Mot. Summ. J., Ex. H.) The request states in relevant part:

> This is also a formal notice of dispute pursuant to the Fair Debt Collection Practices Act. I am sending this request and providing you with notice that your claim of amounts due and owing to BAC Home Loans Servicing, LP is disputed and lawful validation is hereby demanded including disclosure by BAC as to who the specific investor/owner of the obligation actually is.

(Dkt. 20, Def. Mot. Summ. J., Ex. H.) Plaintiff requested that BACHLS produce a number of documents to "prov[e] that it had authority to service and collect on Plaintiff's loan obligation." (Dkt. 15, Am. Compl. ¶ 40.)

Plaintiff alleges that on December 30, 2010, "BAC acknowledged receipt of the December 17, 2010 qualified written request and dispute letter." (Dkt. 15, Am. Compl. ¶ 41.) This December 30, 2010 letter, however, sent by John W. Ellis, an attorney for BACHLS, states that BACHLS was

---

[4] Plaintiff's Amended Complaint states "On December 17, 2010, Plaintiff sent a second dispute letter to Defendants T&T and BAC . . . ." (Dkt. 15, Am. Compl.¶ 40.) Defendants acknowledge that they received a copy of the letter from BACHLS, but not from Plaintiff. (Dkt. 20, Def. Mot. Summ. J. at 2-3.)

in receipt of Plaintiff's letters "dated November 26, 2010 and December 4, 2010."[5] (Dkt. 15, Am. Compl., Ex. E, Dkt. 20, Def. Mot. Summ. J., Ex. I.) The letter from Mr. Ellis concluded, "The concerns addressed in your correspondence require further detailed analysis. We will respond to your request after we have completed our investigation." (*Id.*)

Plaintiff alleges that Trott "sent Plaintiff another demand letter" on January 11, 2011. (Dkt. 15, Am. Compl. ¶ 42.) This letter is essentially identical in substance to the letter sent to Plaintiff on December 9, 2010. (Dkt. 15, Am. Compl., Ex. F, Dkt. 20, Def. Mot. Summ. J., Ex. I.) The January 11, 2011 letter states, "This letter is in response to your request for a payoff amount." (*Id.*) The letter advises that Plaintiff owes $378,364.10 to BACHLS. (*Id.*) This is the last correspondence in the record between Plaintiff and Defendants. Subsequently, on May 24, 2011, May 31, 2011, June 7, 2011 and June 14, 2011, Trott published Foreclosure Advertisements in the St. Clair Shore County "Times Herald." (Dkt. 15, Am. Compl., ¶ 51, Dkt. 15, Am. Compl., Ex. I.)

**C. Plaintiff's Allegations Regarding Defendant's Business**

Plaintiff maintains that Defendant Trott & Trott is a Michigan law firm, which operates as a debt collector in the area of foreclosure and mortgage servicing. (Dkt. 15, Am. Compl. ¶ 18-20.)[6] Plaintiff further alleges that Defendant Marcy J. Ford drafts assignments of mortgages and that Defendant Kenneth E. Kurel executes these "assignment and conveyance documents on alleged

---

[5] Plaintiff sent separate letters to BACHLS in order to dispute the debt. (Dkt. 15 at ECF Pg. ID 857.)

[6] While not mentioned by the parties, the Court notes that Defendant Trott & Trott's letterhead describes itself as "A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT." (Dkt. 20, Def. Mot. Summ. J., Exs. E,D,I, Dkt. 15, Am. Compl., Ex. H.) Trott also proclaims in its correspondence with Plaintiff to be in compliance with the FDCPA. (Dkt. 20, Def. Mot. Summ. J., Ex. F.)

signing authority for MERS and other corporate entities." (*Id.* at ¶ 21-22.) These documents are then recorded in the public records. (*Id.* at ¶ 23.) Plaintiff further alleges that in drafting and executing these assignment and conveyance documents, Defendants do not validate or verify "that the mortgage loan assets are actually owned by the corporate entity they represent or are signing for . . . . [and] in fact these assignment conveyance documents are not authentic." (*Id.* at ¶ 24-25.) Plaintiff offers as evidence the assignment of the Mortgage by MERS to Deutsche Bank as the Trustee for the Harborview Mortgage Loan Trust. (*Id.* at ¶ 26.) Plaintiff maintains that this Trust does not exist because it does not include a series identifier. (*Id.*) Thus, Plaintiff concludes that Defendants "execute and record documents in the public record in the course of collecting on a debt without even verifying the character, legal status and amount of the debt." (*Id.* at ¶ 29.)

Defendants maintain that neither the November 29, 2010 letter nor the December 16, 2010 letter " request[ed] that Trott or anyone else validate the debt." (Dkt. 20, Def. Mot. Summ. J. at 2.) Even if they did, claim Defendants, the letters from Trott dated December 8, 2010 and January 11, 2011, both independently "identified the entity foreclosing, validated the debt at issue and included an amount necessary to reinstate . . . . [or] pay off the loan." (*Id.* at 2-3.) Lastly, Defendants maintain that the December 30, 2010 letter from attorney Ellis, resolved the controversy, therby "mooting all of Plaintiff's claims" that the debt had not been verified or validated. (*Id.* at 3.)

**D. Plaintiff's Claims Against Defendants**

Plaintiff brings seven claims against Defendants and one claim in the alternative regarding his challenge to the validity of his Mortgage debt. (Dkt. 15, Am. Compl. ¶ 44-100.) Counts I-IV allege that Defendant's violated §§ 1692d-1692g of the FDCPA. (*Id.* at ¶ 44-79.) Count V alleges in the alternative that Defendants violated the Michigan Occupational Code ("MOC"), Mich. Comp.

Laws § 339.901. (*Id.* at ¶ 80-84.) Count VI alleges that Defendants violated the Michigan Collection Practices Act ("MCPA"), Mich. Comp. Laws § 445.251. (*Id.* at ¶ 85-89.) Count VII alleges Conversion. (*Id.* at ¶ 90-95.) Count VIII alleges Constructive Fraud and Unjust Enrichment. (*Id.* at ¶ 96-100.) Defendants argue that Plaintiff has failed to state a claim on which relief can be granted as to these claims, or that there is no genuine issue of material fact and they are entitled to judgment as a matter of law.

**II. STANDARD OF REVIEW**

Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss pursuant to Rule 12(b)(6). *See Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a "probability requirement," but it does

require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, and (3) public documents. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007); *Amini* v. *Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). The court's consideration of these document does not require conversion of the motion to one for summary judgment. *Greenberg* v. *Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).[7]

Turning to Defendants' alternative request for relief, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (explaining that the moving party may carry its summary judgment burden without "produc[ing] evidence showing the absence of a genuine issue

---

[7] The Court is also mindful that "[a] *pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof"). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

## III. ANALYSIS

### A. Counts I-IV: Violations of The Fair Debt Collection Practices Act

Plaintiff alleges that Defendants violated four sections of the FDCPA. (Dkt. 15, Am. Compl. ¶ 44-79.) Plaintiff first alleges that Defendants violated Section 1692d(4) by advertising the foreclosure sale of the Property on four separate occasions. (*Id.* at ¶ 51.) Next, Plaintiff argues that Defendants violated Section 1692e(2)(A) by misrepresenting "the character of the debt by producing, signing and recording a fraudulent assignment of mortgage." (*Id.* at ¶ 58-59.) Similarly, Plaintiff alleges that Defendants violated Section 1692f(1) by "trying to collect on a debt that is not

expressly authorized by the agreement creating the debt or in compliance with state law . . . . because there is no evidence . . . that the promissory note is held by the alleged creditor represented by the Defendants," and therefore, the assignment of Mortgage is null and void without an assignment of the Note. (*Id.* at ¶ 69-70.) Lastly, Plaintiff alleges that Defendants violated Section 1692g(b) because they continued collection practices without verifying or sending a copy of the verification to Plaintiff after Plaintiff disputed the debt. (*Id.* at ¶ 79.)

Defendants contend that they are entitled to summary judgment on these claims because: (1) they are not "debt collectors" under the FDCPA's statutory definition; (2) the drafting, assigning and recording of the Mortgage were valid in all respects ; (3) Plaintiff lacks standing to challenge the assignment of the Mortgage; and (4) they provided legally sufficient verification of the debt. (Dkt. 20, Def. Mot For Summ. J. at 5-15.)

*1. Trott is Not a Debt Collector Under the FDCPA*

"As a matter of law, liability under §§ 1692d and 1692e can only attach to those who meet the statutory definition of a 'debt collector.'" *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003). The FDCPA, which was enacted to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

The Supreme Court has held that the FDCPA "applies to attorneys who regularly engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995); *see also Kistner v. Law Office of Michael P.*

*Margelefsky, LLC*, 513 F.3d 433, 438 (6th Cir. 2008) (holding that an attorney, who regularly engaged in debt-collection was a "debt collector" under the FDCPA); *Romberger v. Wells Fargo Bank, N.A.*, No. 07-13210, 2008 WL 3838026, at *4 (E.D. Mich. Aug. 14, 2008) (relying on *Heintz* that "law firms which 'regularly' engage in consumer-debt collection activity are considered 'debt collectors'"). While Defendants acknowledge *Heintz*, they rely instead on cases that hold that law firms and attorneys who pursue non-judicial foreclosures for a lender-client are not "debt collectors" under the FDCPA because they are enforcing a security interest in the property through the foreclosure. (Def. Mot. Summ. J. at 12-14.). This argument stems from the Sixth Circuit's ruling in*Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003).

In *Montgomery*, the plaintiff asserted that defendant, a repossession agency, violated the FDCPA when it repossessed the plaintiff's mother's automobile. *Montgomery*, 346 F.3d at 695. The repossession agency, which had been hired by the bank that held a security interest in the automobile, moved to dismiss the complaint on the grounds that it was not a "debt collector" under the FDCPA. *Id.* The Court concluded that the defendant repossession agency was not a "debt collector" because Congress did not intend for the FDCPA to apply to agencies or individuals enforcing security instruments, except under § 1692f(6), and the plaintiff had not alleged a violation under that section. *Id.* at 700-01.[8]

In *Montgomery*, however, the Sixth Circuit also stated that:

> [The plaintiff] has not alleged that [the defendant collection-agency]

---

[8] Section 1692f(6) provides: "Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if — (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;(B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." 15 U.S.C. § 1692f(6).

> is a business whose "principal purpose" is debt collection, or that it regularly collects or attempts to collect debts owed to another. His allegations reveal only that [the defendant] was seeking recovery of the [automobile] that was posted as collateral for the personal loan given to [the defendant's mother by the bank] . . . . As such, [the defendant] does not qualify as a debt collector under §§ 1692d and 1692e.

*Id.* at 701. Thus, other courts, in this District, have construed *Montgomery* to mean that even if a defendant is enforcing a security interest, it can still be deemed a debt collector if the record establishes that its principal business is debt collection or that it regularly engages in debt collection.. *See e.g. McDermott v. Randall S. Miller & Associates, P.C.*, 835 F. Supp. 2d 362, 376-77 (E.D. Mich. 2011) (citing *Kaltenbach v. Richards*, 464 F.3d 524, 527 (5th Cir. 2006) and collecting cases). In *McDermott*, the Court explained:

> If § 1692f(6) were the only section of the FDCPA under which a plaintiff could ever assert a claim against an entity whose principal business is the enforcement of security interests, the *Montgomery* court's analysis would have stopped upon determining the defendant was a repossession agency and finding that the complaint did not assert any claims under § 1692f(6). But the *Montgomery* court's analysis **did not** stop there; the Court went on to consider whether the plaintiff's complaint alleged that [the defendant] is a business that regularly collects or attempts to collect debts owed to another (i.e. whether [the defendant] otherwise met the definition of a debt collector under the statute.

*McDermott*, 835 F. Supp. 2d at 377 (emphasis in original). The Court further noted:

> Moreover, under Defendant's reading of *Montgomery*, a business could devote 75% of its business to enforcing security interests, with the remaining 25% of its business consisting of collection of consumer debts, and yet the only FDCPA claim that could be asserted against that entity would be a claim under § 1692f(6). Such a reading would allow such a mixed-purpose entity to pursue the collection of consumer debts with impunity under the FDCPA.

*Id.* at 377 n. 2; *see also Golliday v. Chase Home Fin., LLC*, 761 F.Supp.2d 629, 635 (W.D.Mich.

2011) ("To determine whether a defendant is a debt collector, the Court must look beyond the facts of the particular case to determine whether a defendant's 'principal purpose' is to collect debts or whether the defendant regularly engages in collecting debts."). As the *McDermott* court summarized, "under *Montgomery*, an entity whose business has the principal purpose of enforcing security interests is subject only to § 1692f(6), – provided that entity does not otherwise satisfy the definition of a debtor collector under the statute." *Id*. at 376.

While the record supports that Trott's primary duty in this matter was to enforce its client's security interest, the Court has to consider whether the record also reveals that Trott's principal business is debt collection. Plaintiff's Amended Complaint alleges that Trott is in the business of collecting debts and that "Defendants are 'debt collectors' under 15 U.S.C. § 1692a(6)." (Dkt. 15, Am. Compl. ¶ 47.) Plaintiff attaches letters from Trott to his Amended Complaint that include the heading, "THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE." (Dkt. 15, Am. Compl., Exs. B, C, F; Dkt. 20, Def. Mot. Summ. J., Exs. E, G, I.). And the November 22, 2010 letter that Trott sent to Plaintiff includes directions on how to dispute the debt under § 1692g(b) and an attachment entitled, "NOTICE REQUIRED BY THE FAIR DEBT COLLECTIONS PRACTICES ACT 15 U.S.C. 1692g AS AMENDED." (*Id*.)[9]

In analyzing similar facts involving another law firm that operates like Trott, District Judge Nancy G. Edmunds ruled that the firm was not a "debt collector" for purposes of the FDCPA. As

[9] While not included in his Amended Complaint, Plaintiff states in his Response to Defendant's Motion for Summary Judgement, "Trott & Trott, P.C. is a litigation firm that handles consumer debts — this is exactly what it does 'regularly.' This is blatantly evident just by viewing firm information on the website." (Dkt. 22, Pl.'s Resp. to Def. Mot. Summ. J. at 14-15.)

Judge Edmunds explained:

> Plaintiffs have not met their burden to plead in their complaint or with their offered documents to show that Orlans is a debt collector. Plaintiffs' argument fails for two reasons. First, the Sixth Circuit has held that an entity that forecloses on a security interest is not a debt collector. See *Montgomery*, 346 F.3d at 700-01 (quoting and concluding, "an enforcer of a security interest . . . falls outside the ambit of the FDCPA for all purposes, except for the purposes of § 1692f(6).") (citation omitted); *see also Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009) (citing *Montgomery* with approval and holding, "the plain language of the FDCPA supports . . . the conclusion that foreclosing on a security interest is not debt collection activity for purposes of [certain FDCPA provisions]," and "an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f." (second alteration in original, citations omitted)). Because enforcing a security interest such as a mortgage does not make Orlans a debt collector, Plaintiffs' argument fails.
>
> Their argument also fails because the letters and the unverified phone message [referencing the FDCPA and defendant as a debt collector] do not establish that Orlans's principal purpose is debt collection. Courts in this circuit have held similarly.
>
> In *Golliday*, the court discussed the effect of a disclaimer at the top of the letter, such as the one at issue in this case. There, the letter stated: "This firm is a debt collector attempting to collect a debt. Any information we obtain will be used for that purpose." *Golliday*, 761 F.Supp.2d at 636. The court surveyed other cases involving such letterhead disclaimers and found that "[c]ourts . . . have rejected the proposition that a law firm is transformed into a debt collector when its [letterhead] contains such a disclaimer." *Id.* The reason a letterhead disclaimer was there, the court stated, was that in limited circumstances for limited provisions of the FDCPA (for 15 U.S.C. § 1692f(6)), a law firm may be a debt collector. (*Id.*) The letterhead therefore was there to err on the side of caution. The court stated that the firm should not be faulted for erring so. The court held that the law firm "was admittedly representing a client in nonjudicial foreclosure proceedings and therefore was well advised to include [the disclaimer]." (*Id.*) But that disclaimer, "without more, did not transform the firm into a debt collector for all purposes . . . [and] is insufficient to raise a triable issue of fact on the question of the firm's status as a debt collector." (*Id.*)

* * *

> But again, here, Orlans did not try to collect on a debt, it informed Plaintiffs that it was going to proceed with foreclosure to enforce the security interest. The letters and voicemail message, standing alone, are not sufficient to transform Orlans into a debt collector.

*Rogers v. RBC Mortg. Co.*, No. 11-11167, 2011 U.S. Dist. LEXIS 88517, at * 20-25 ( E.D. Mich. Aug. 10, 2011); *see also Johnson v. Trott & Trott*, 829F. Supp. 2d 564 (W.D. Mich. 2011) (explaining that "[t]he only factual allegation in Plaintiff's amended complaint that could possibly be viewed as alleging that Trott & Trott is a 'debt collector' for non-1692f(6) purposes occurs when Plaintiff notes that the letter he received stated 'THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.' (citation omitted) This district and other districts within this circuit have previously held that such disclaimers are insufficient to show that a law firm is a debt collector for non-1692f(6) purposes."). *But see McDermott*, 835 F. Supp. 2d at 377 (finding that plaintiff's allegations that defendant was a debt collector, that its phone greeting indicated it was a debt collector, and that it regularly attempted to collected defaulted consumer mortgage debts by attempting to effectuate loan modifications, were sufficient to plead a claim under the FDCPA); *Romberger*, 2008 WL 3838026, at *4 ("When construing the facts in a light that are most favorable to [Plaintiff] at this stage of the proceedings, the Court cannot conclude that Trott & Trott is not a debt collector, as that term is used in the FDCPA. In fact, there is evidence that this law firm forwarded letters to [Plaintiff] which stated: THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.").

Here, Trott was not seeking to collect on a debt, but informed Plaintiff it was going to initiate foreclosure proceedings. The weight of authority suggests that Trott's letters are insufficient to transform it into a debt collector for non-1692f(6) purposes Thus, the Court recommends granting

Defendants' Motion for Summary Judgment/Dismissal as it relates to the FDCPA claims. Moreover, even if Trott's conduct in this case was subject to the FDCPA, the Court would still recommend dismissal of the FDCPA claims on the merits.

*2. Violations of Sections 1692e & 1692f*

Plaintiff contends that the assignment of the Mortgage to Deutsche Bank was invalid and thus, Defendants' actions with respect to the outstanding Mortgage debt violate §§ 1692e & 1692f of the FDCPA. (Dkt. 15, Am. Compl. ¶¶ 43, 59, 70.) Section 1692e provides, in general, that "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692f likewise provides that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. (*Id.* at ¶ 58, 69.) More specifically, section 1692e(2)(A) provides that it is a violation of the FDCPA for a debt collector to provide "the false representation of the character, amount or legal status of a debt." 15 U.S.C. § 1692e(2)(A). Section 1692f(1) provides that it is a violation of the FDCPA for a debt collector to collect " any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Plaintiff contends these specific provisions were violated "because there is no evidence that the promissory note . . . . continues to exist or that the promissory note is held by the alleged creditor." (*Id.* at 59, 70.)

Before addressing the merits of Plaintiff's claims regarding the validity of the Mortgage assignment, the Court will address Defendants' argument that Plaintiff lacks standing to challenge the assignment. (Dkt. 20, Def. Mot. Summ. J. at 7-8.)

*a. Plaintiff Lacks Standing to Challenge the Assignment of the Mortgage*

Plaintiff alleges that the assignment of the Mortgage to Deutsche Bank was not valid because either (1) the trust referenced in the assignment does not exist or (2) there was no assignment of the Note. (Dkt. 15, Am. Compl. ¶ 27, 70). In addressing a virtually identical argument, another court in this District recently ruled:

> Regarding Plaintiff's standing to challenge the assignment between Defendants MERS and Wells Fargo, this Court previously held as follows:
>
>> Plaintiff, however, relies on language in *Livonia Property Holdings [v. 12840-12976 Farmington Rd. Holdings, LLC*, 717 F. Supp. 2d 724 (E.D. Mich. 2010)] noting that "a debtor may assert certain defenses that render an assignment absolutely invalid (such as nonassignability of the right assigned) . . . ." *Id.* 735-36. Plaintiff argues that his claims to void the assignment are based upon the assertion that Defendant MERS did not have the right to assign the mortgage. Nevertheless, a non-party to an assignment may not challenge the assignment if the assignor and assignee do not contest the document and act in accordance with it. *Id. at 736* (discussing *Pashak v. Interstate Highway Construction, Inc.*, No. 189886, 1998 Mich. App. LEXIS 2553, 1998 WL 2001203 (Mich. Ct. App. Mar. 20, 1998)).
>
> (Feb. 28, 2012 Op. and Order 5-6.)
>
> Plaintiff attempts this exact argument again in his Response. Specifically, Plaintiff argues that MERS lacked authority to assign the mortgage as the lender's "nominee."
>
> The Sixth Circuit recently upheld reasoning similar to the Court's prior holding, stating that a non-party to an assignment could not challenge the validity of the assignment, as follows: "We agree with the district court that any defect in the written assignment of the mortgage would make no difference where both parties to the assignment ratified the assignment by their subsequent conduct in

> honoring its terms, . . . and that Yuille, as a stranger to the assignment, lacked standing to challenge its validity . . . ." [*Yuille v v. Amer. Home Mortg. Servs.*, Inc., No. 10-2564, 2012 U.S. App. LEXIS 10797, * 7 (6th Cir. May 29, 2012)].
>
> The Court thus finds that Plaintiff lacks standing to challenge the validity of the assignment between Defendants MERS and Wells Fargo.

*Cable v. Mortgage Electronic Registration Sys., Inc.*, No. 11–14877, 2012 U.S. Dist. LEXIS 87092, at *6-8 (E.D. Mich. June 22, 2012); *see also Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010) (stating that there is ample authority to support the proposition that a litigant who is not a party to a mortgage assignment lacks standing to challenge that assignment).

This Court recognizes that in *Livonia Properties*, the Court stated:

> An obligor "may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void." 6A C.J.S. *Assignments* § 132 (2010). These defenses include nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment. *Id.* Obligors have standing to raise these claims because they cannot otherwise protect themselves from having to pay the same debt twice. *Id.*

*Id.* The Court found, however, that the plaintiff was not at risk of paying twice because the defendant established it held the original note by producing copies and the original note. *Id.*

Here, Plaintiff has presented no evidence that anyone other than MERS or its assignees claim to hold the Note or claim to be the servicer of the Mortgage. His "mere conjecture that he could at some point be subject to double liability is not sufficient to withstand a motion brought pursuant to Federal Rule of Civil Procedure 56." *Cable*, 2012 U.S. Dist. LEXIS 87092, at *10-11. Accordingly, because MERS and Deutsche Bank "ratified the assignment by their subsequent conduct in honoring its terms," and there is nothing in the record to suggest Plaintiff was subject to

double liability on the debt, Plaintiff lacks standing to challenge the assignment of the Mortgage.

*b. The Assignment of the Mortgage Was Valid*

Even if Plaintiff had standing to challenge the assignment of the Mortgage from MERS to Deutsche Bank, Plaintiff's FDCPA claims still fail as a matter of law.

In support of his allegations that Defendants violated § 1692e and § 1692f of the FDCPA, Plaintiff contends that, under Michigan Law, an assignment of a mortgage without the note is a nullity. (Dkt. 22, Pl.'s Resp. To Def. Mot. Summ. J. at 2) (citing *McKeighan v. Citizens Commercial & Sav. Bank of Flint*, 5 N.W.2d 524, 526 (Mich. 1942) [10] Thus, Plaintiff maintains that MERS could not effectively assign the Mortgage without also holding and assigning the Note. (Dkt. 22, Pl.'s Resp. To Def. Mot For Summ. J. at 2.) This Court disagrees. .

In *Bakri v. Mortgage Electronic Registration System*, No. 297962, 2011 WL 3476818 (Mich. Ct. App. Aug. 9, 2011), the Michigan Court of Appeals held that "[b]ecause plaintiff granted defendant MERS the power to assign the mortgage, the assignment of the mortgage to [the foreclosing bank] was valid." *Bakri*, 2011 WL 3476818 at *4. The Sixth Circuit recently approved *Bakri* in *Hargrow v. Wells Fargo Bank, N.A.*, No. 11-1806, 2012 WL 2552805, at *3 (6th Cir. July 3, 2012). The Court in *Hargrow* reasoned that "the initial premise [of *Bakri*] that the proper assignee of a mortgage retains the same rights as the original mortgagee remains valid." *Id.* The Sixth Circuit also found that:

> MERS was unambiguously the original mortgagee of the [Plaintiffs'] Mortgage. The [plaintiffs] granted MERS the power to assign the

[10] Plaintiff also references *Carpenter v. Longan*, 83 U.S. 271, 274 (1872) for the same proposition, stating, "The note and the mortgage are inseparable; the former essential, the latter as an incident. An assignment of the note carries the mortgage with it, while the assignment of the latter alone is a nullity." *Carpenter*, 83 U.S. at 274.

> Mortgage, and MERS used that power to assign the Mortgage to Wells Fargo. The assignment was recorded in the Washtenaw County Clerk's Office, creating a clear record chain of title for the Mortgage. The Mortgage also gave MERS as mortgagee the power to initiate foreclosure proceedings, and once assigned, Wells Fargo as record-holder of the Mortgage also had the power to foreclose under the Mortgage.

*Id.*

Here, as in *Hargrow*, the Mortgage clearly establishes that MERS was the original mortgagee and that Plaintiff granted MERS the power to assign the Mortgage. (Dkt. 20, Def. Mot. Summ. J., Ex. B.) The Mortgage states, "Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property . . . ." (*Id.*) The assignment was recorded in the St. Clair County Registry of Deeds on November 19, 2010, creating a clear record chain of title for the Mortgage. Thus, the assignment of the Mortgage to Deutsche Bank was valid in all respects.

As such, the claims that Defendants violated Sections 1692e and 1692f of the FDCPA because the Mortgage assignment was invalid fail as a matter of law.[11]

---

[11] On July 24, 2012, more than two months after Defendants filed their Reply Brief, Plaintiff filed a motion for leave to file a supplemental response brief. (Dkt. 24.) In his supplemental brief, Plaintiff maintains that the Harborview Trust was "liquidated in connection with a payoff by Syncora Guarantee, Inc.," which is a company that insures residential mortgage backed securities ("RMBS"). (*Id.* at Ex. A.) Plaintiff's exhibits show that Syncora offered holders of RMBS backed by a number of trusts, including the Harborview Trust, cash for their securities. (*Id.* at Ex.1.) But even if Plaintiff could show that the Trust had been liquidated, per an optional purchase of the Mortgage Loans, BACHLS would then be the creditor to which Plaintiff's Mortgage was owed. Thus, the Court finds that Plaintiff's supplemental brief and his arguments contained therein do not create a genuine issue of material fact.

*3. Violations of Section 1692g*

Plaintiff alleges that Defendants violated Section 1692g(b) by not "providing verification of the debt" and "by attempting to collect" after Plaintiff informed Defendants that he was disputing the debt. (Dkt. 15, Am. Compl. ¶ 79.)

Section 1692g(b) of the FDCPA provides:

> If the [borrower] notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the [debtor] requests the name and address of the original creditor, the debt collector shall cease collection of the debt ... until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the [mortgagee], and a copy of such verification or judgment, or name and address of the [mortgagee], is mailed to the [borrower] by the debt collector.

15 U.S.C. § 1692g(b). Courts in this District have found that § 1692g(b) requires "'nothing more than the debt collector confirming in writing that the amount being demanded is what the [mortgagee] is claiming is owed.'" *Mabry v. Ameriquest Mortg. Co.*, No. 09-12154, 2010 WL 1052353, at *4 n.1 (E.D. Mich. Feb. 24, 2010) (quoting *Rudek v. Frederick J. Hanna & Assocs., P.C.*, No. 08–288, 2009 WL 385804, at *2 (E.D. Tenn. Feb. 17, 2009)); *see also Smith v. MERS*, No. 10-12508, 2012 WL 1963605, at *2 (E.D. Mich. May 9, 2012) *adopted by Smith v. MERS*, No. 10-12508, 2012 WL 1963604 (E.D. Mich. May 31, 2012). Furthermore, debt collectors "have no duty to forward 'copies of bills of other detailed evidence of the debt.'" *Smith*, 2012 WL 1963605 at *2 (quoting *Rudek*, 2009 WL 285804 at *3 (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999))).[12]

---

[12] *Chaudhry* notes that these requirements are "[c]onsistent with the legislative history, [in that] verification is only intended to 'eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the [borrower] has already paid.'" *Chaudhry*, 174 F.3d

Defendants contend that their December 9, 2010 and January 11, 2011 letters sufficiently verified the debt. (Dkt. 20, Def. Mot. Summ. J., Exs. G, I.) The December 9, 2010 letter contained Plaintiff borrower's name, the property address, the loan number, the name of the mortgagee and a reinstatement amount. (Dkt. 20, Def. Mot. Summ. J., Ex. G.) The January 11, 2011 letter contained the same information, but it provided a total payoff amount rather than a reinstatement amount. (Dkt. 20, Def. Mot. Summ. J., Ex. I.) The information contained in these letters is sufficient to satisfy the requirements of § 1692g(b). *See Thomas v. Trott & Trott, P.C.*, No. 10–13775, 2011 WL 576666 at *7 (E.D. Mich. Feb. 9, 2011) (holding that defendant's response to plaintiff's validation request complied with the FDCPA because the response contained plaintiff's name, the property, address, the name and address of the defendant's client, the loan number, a total estimated reinstatement amount, and a total estimated pay–off amount). Plaintiff offers no evidence to dispute the fact that Defendants properly verified the debt. Accordingly, summary judgment is appropriate on this claim.

*4. Violations of Section 1692d(4)*

Plaintiff alleges that Defendants violated Section 1692d(4) of the FDCPA by advertising the foreclosure sale of the Property on four separate occasions. (*Id.* at ¶ 51.)While not specifically discussed in their brief, Defendants appear to contend that this conclusory allegation does not state a claim. (Dkt. 20, Def. Mot Summ. J. at 9-11.) Section 1692d of the FDCPA provides that

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (4)The advertisement for sale of any debt to coerce

at 406 (quoting S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699).

> payment of the debt.

15 U.S.C § 1692d. There is nothing in the Amended Complaint or the record that establishes Defendants placed the advertisements to coerce payment rather than to initiate foreclosure and comply with the requirements for a non-judicial foreclosure. Plaintiff has not provided any case law that simply advertising a foreclosure sale multiple times constitutes a violation of the FDCPA . As such, there is an absence of evidence supporting this claim. Plaintiff cannot rely on mere speculation to support his claim. *See Celotex*, 477 U.S. at 325. Hence, this Court recommends that Defendants' Motion for Summary Judgment/Dismissal be granted as to Plaintiff's Section 1692d(4) claim.

**B. Counts V: Violation of The Michigan Occupational Code**

Plaintiff alleges that Defendants Trott & Trott and their individual employees form a "collection agency" as the term is defined in the Michigan Occupational Code ("MOC"), Mich. Comp. Laws § 339.901(b), and that Defendants violated the MOC. (Dkt. 15, Am. Compl. ¶ 81-82.) The MOC provides:

> Collection agency *does not* include a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency such as, but not limited to, the following:
>
> (xi) An attorney handling claims and collections on behalf of clients and in the attorney's own name.

Mich. Comp. Laws § 339.901(b) (emphasis added). Thus, attorneys and law firms engaged in collection activities on behalf of clients, such as Trott here, are not "collection agencies" under the MOC. *See McKeown v. Mary Jane M. Elliot P.C.*, No. 07–12016–BC, 2007 WL 4326825, at *9 (E.D. Mich. Dec. 10, 2007.) (holding that defendant law firm was not a "collection agency" under

MOC when it attempted to collect on behalf of its client a consumer debt owed by plaintiffs). Consequently, Plaintiff's claims that Defendants violated the MOC fails as a matter of law.

**C. Count VI: Violation of The Michigan Collection Practices Act**

The Michigan Collection Practices Act ("MCPA") is similar to the MOC and is intended "to regulate the collection practices of certain persons" that meet the statutory definition of "regulated person." Mich. Comp. Laws §§ 445-445.252. Defendants maintain that Plaintiff's claims under the MCPA must fail as a matter of law because Defendants do not meet the statutory definition of "regulated person." (Dkt. 20, Def. Mot For Summ. J. at 16.)

The MCPA provides:

> "Regulated person" means a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including the following:
>
> (xi) An attorney handling claims and collections on behalf of a client and in the attorney's own name.

Mich. Comp. Laws § 445.251(g). Defendants maintain that they are not a "regulated person" under the statute because they were not handling a claim in their own name but on behalf of BACHLS. (Dkt. 20, Def. Mot For Summ. J. at 15-16.) Defendants rely on *Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi, P.C.*, No. 1:04–733, 2005 WL 2180481, at *7 (W.D. Mich. Sept. 9, 2005), in which the court held that a law firm which filed a lawsuit against a debtor on behalf of a bank and in the bank's own name for defaulting on credit card payments, was not a "regulated person" under the MCPA. *Id.* As Plaintiff points out in his Response, this reasoning has been rejected. In *Misleh v. Timothy E. Baxter & Associates*, 786 F. Supp. 2d 1330 (E.D. Mich. 2011), the Court stated:

> This Court is not persuaded by *Stolicker's* reading of the statutory definition of a "regulated person."
>
> * * *
>
> When the MCPA's definition of a "regulated person" is juxtaposed against the very same language found in the section of the Michigan Occupational Code directed at collection agencies, it becomes clear that the term "regulated person" as used in the MCPA is intended to encompass a law firm pursuing debt collection activities on behalf of a client. The Occupational Code's definition of a "collection agency" includes language that exactly mimics the MCPA's definition of a "regulated person," with the result that those who are excluded from the definition of a "collection agency" are included as "regulated persons" under the MCPA . . . . Thus, the courts have recognized that a person or entity engaged in debt collection activities is either a "collection agency" under the Occupational Code or a "regulated person" under the MCPA, but not both. *See Gradisher v. Check Enforcement Unit, Inc.*, 133 F.Supp.2d 988, 992–93 (W.D.Mich.2001); *McKeown v. Mary Jane M. Elliott, P.C.*, No. 07–12016, 2007 WL 4326825, at *9 (E.D.Mich. Dec. 10, 2007).
>
> Viewed in this context, the MCPA's reference to "[a]n attorney handling claims and collections on behalf of a client and in the attorney's own name," Mich. Comp. Laws § 445.251(g)(xi), is better understood as encompassing both attorneys who handle claims and collections on behalf of a client and attorneys who seek to collect a debt owed to themselves or their firms.

*Misleh*, 786 F. Supp. 2d at 1337. The Court went on to hold that the defendant law firm and its employees "fit squarely within the definition of a regulated person." *Id.* at 1338 (internal quotation marks and citations omitted). Likewise here, the Court finds that the Defendant law firm and its employees "fit squarely within the definition of a regulated person" under the MCPA *Id.* at 1338.

Plaintiff, however, does not allege that Defendants violated any specific provision of the MCPA.[13] (Dkt. 15, Am. Compl.¶ 85-89.) He merely "incorporates the preceding allegations by

[13] Plaintiff does appear to reference Mich. Comp. Laws § 445.256 when he pleads that the violations "were willful," but fails to identify the specific violations.

reference." (Dkt. 15, Am. Compl. ¶ 85; Dkt. 22, Pl.'s Resp. To Def. Mot. Summ. J. at 19-22.) Construing these allegations liberally, it appears Plaintiff is relying on his FDCPA claims — that the assignment of the Mortgage was invalid. But MCPA claims which "simply duplicate . . . claims under the FDCPA" need not be addressed separately. *Lovelace v. Stephens & Michaels Assocs*, No. 07–10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 7, 2007); *see also*, *Saltzman v. I.C. System, Inc.*, No. 09–10096, 2009 WL 3190359, at *9 (E.D. Mich. Sept. 30, 2009). Consequently, Plaintiff's MCPA claims fail for the same reasons that his identical FDCPA claims fail.

**D. Count VII: Conversion of Plaintiff's Property**

Plaintiff's Amended Complaint also includes a count of Conversion, alleging that Defendants "exerted wrongful control over [the Note] in an attempt to gain possession of the [Note]." (Dkt. 15, Am. Compl. ¶ 91.) Conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Kama v. Wells Fargo Bank*, No. 10–10514, 2010 WL 4386974, at *3 (E.D. Mich. Oct. 29, 2010) (internal citations omitted). Here, the Mortgage makes clear that the Note was the property of Countrywide and its assignees. (Dkt. 20, Def. Mot. Summ. J., Ex. B.) The Note represents an obligation of the Plaintiff rather than property of the Plaintiff. Thus, Defendants are entitled to judgment as a matter of law on Plaintiff's conversion claim.

**E. Count VIII: Constructive Fraud & Unjust Enrichment**

Lastly, Plaintiff alleges, in the same count, that Defendants committed constructive fraud and have been unjustly enriched. (Dkt. 15, Am. Compl. ¶ 97-100.) This Court finds that Defendants are entitled to summary judgment on both claims.

*1. Constructive Fraud*

In order establish a claim of fraud, Plaintiff must prove that:

> (1) defendant[s] made a material representation; (2) the representation was false; (3) when the representation was made, the defendant[s] knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant[s] made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*M & D, Inc. v. McConkey*, 585 N.W.2d 33, 36 (Mich. 1998) (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976)). Constructive fraud "only requires a misrepresentation which need not amount to a purposeful design to defraud." *General Elec. Credit Corp. v. Wolverine Ins. Co.*, 362 N.W.2d 595, 601 (Mich. 1984).

Plaintiff's claim of constructive fraud is based on his argument that the assignment of the Mortgage was invalid and Defendants knew it to be invalid. (Dkt. 15, Am. Compl. ¶ 97.) As discussed, the argument regarding the validity of the assignment has no legal or factual merit and thus, Defendants are entitled to summary judgment on Plaintiff's constructive fraud claim.

*2. Unjust Enrichment*

A claim of unjust enrichment requires that Defendants received a benefit from Plaintiff to which they were not entitled. *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. App. 1993). Plaintiff has not presented any evidence that Defendants received such a benefit. In his Response to Defendants' Motion for Summary Judgment, Plaintiff merely states, "Absent validation of the debt, Defendant as well as BAC[HLS] and Harborview *will be unjustly enriched* by foreclosing on Plaintiff's home for a debt that was not owed to BAC[HLS] or Harborview." (Dkt. 22, Pl.'s Resp. To Def. Mot. Summ. J. at 23 (emphasis added).) Not only is the claim based on speculation, but the

record establishes that the debt was validated. Thus, summary judgment is warranted on the unjust enrichment clam as well.

## IV. CONCLUSION

For the foregoing reasons, this Court **RECOMMENDS** that Defendants' Motion for Summary Judgment/Dismissal be **GRANTED** and that Plaintiff's Amended Complaint be dismissed.

## V. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be

filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated: August 6, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 6, 2012.

s/Jane Johnson
Deputy Clerk